E-FILED
Thursday, 10 June, 2010  04:48:56 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANTHONY MANUELE, STEPHEN LOGUE, JOE GREER, ARTHUR LAWSON, HARVEY RICHARDS, and PETER WILFORD, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  08-3026 |
| CITY OF SPRINGFIELD, ILLINOIS, a municipal corporation, | ) ) ) ) | |
| Defendant. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant's Motion for Summary Judgment (Motion) (d/e 34) and Defendant's Memorandum of Law in Support of Motion for Summary Judgment (Memorandum) (d/e 34-1) filed by the City of Springfield, Illinois (City).  Plaintiffs Anthony Manuele, Stephen Logue, Joe Greer, Arthur Lawson, Harvey Richards, and Peter Wilford have filed The Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment (Response) (d/e 36), and Defendant has filed Defendant's Reply to Plaintiffs' Memorandum in

Opposition to the Defendant's Motion for Summary Judgment (Reply) (d/e 39).

This matter is fully briefed and ripe for adjudication.  For the reasons described below, Defendant's Motion is granted in part and denied in part.

<u>APPLICABLE LAW</u>

A motion for summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." <u>Fed. R. Civ. P.</u> 56(c)(2); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Herman v. Nat'l Broadcasting Co.</u>, 744 F.2d 604, 607 (7th Cir. 1984).  Once the moving party has produced evidence showing that it is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  A court properly enters summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

2

the burden of proof at trial."  Celotex, 477 U.S. at 322; see McKenzie v. Ill.
Dept. of Transp., 92 F.3d 473, 479 (7th Cir. 1996) (quoting Celotex).  The
court does not resolve disputed factual issues, but rather determines whether
"there is a genuine issue for trial."  Blaguss Travel Intern. v. Musical
Heritage Intern., 833 F.Supp. 708, 710 (N.D. Ill. 1993).

To successfully oppose a motion for summary judgment, the non-
movant must do more than raise a "metaphysical doubt" as to the material
facts.  See Zenith, 475 U.S. at 586.  Instead, he must present "specific facts
showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); Zenith, 475
U.S. at 587 (emphasis omitted).  There is not a genuine issue for trial if "the
record taken as a whole could not lead a rational trier of fact to find for the
non-moving party . . . ."  Zenith, 475 U.S. at 587.

FACTS

At all relevant times, Plaintiffs were employed by the City and worked
in its Public Works Department (Department), which is run by Director K.
Michael Norris.  The Department is responsible for constructing, repairing,
and maintaining roadways within the City's boundaries.  Manuele, Logue,
and Lawson were division/zone managers; Greer was an assistant
superintendent; and Richards and Wilford were lead foremen.  According

to Norris, Plaintiffs Manuele, Logue, Greer, and Lawson were salaried employees who earned more than $455 per week.  <u>Motion</u>, Ex. 1, <u>Affidavit of K. Michael Norris</u>, ¶ 3.

From at least 2003 until the late summer of 2007, Plaintiffs believed that they were required by the Department to attend fifteen-minute meetings before their respective shifts began.  During these meetings, a supervisor would discuss issues that needed to be addressed within the City.  On September 4, 2007, Director Norris sent a memo to Plaintiffs instructing them that they should no longer attend the fifteen-minute meetings.  <u>Motion</u>, Ex. 4, <u>Memorandum of September 4, 2007</u>, p. 1 of 116.  These fifteen-minute meetings form the basis of this lawsuit.  Plaintiffs contend that the meetings caused them to work more than forty hours per week, and that they are therefore entitled to overtime compensation for the time they spent at the meetings under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 <u>et</u> <u>seq.</u>

I.   <u>LAWSON</u>

Lawson began working as a division/zone manager in the Department

in 2003.  He was responsible for Wards 5 and 7 within the City.[1]  As part of his job, Lawson drafted service-requests or work orders for sidewalk and pothole repairs.   Lawson would drive around his Wards, looking for potholes, fallen branches, and other such problems.  Lawson testified that he was not responsible for correcting or supervising correction of these problems; instead, he filled out service orders requesting work crews to fix the problems.  Motion, Ex. 5, Deposition of Arthur Lawson (Lawson Dep.), 25:20-23.  However, Plaintiff Richards testified that division/zone managers like Lawson would occasionally supervise and direct the repair crews. Motion, Ex. 9, Deposition of Harvey Richards (Richards Dep.), 20:10-20.

Lawson attended neighborhood association meetings within Wards 5 and 7 to hear residents' concerns about sidewalks, potholes, and drainage issues.  Lawson also worked with Aldermen Cimarossa and Cahnman to resolve sidewalk, pothole, and drainage issues within Wards 5 and 7.  When a resident or Alderman brought a problem to Lawson's attention, he would go out and look at it.  Lawson Dep., 8:16-21; 19:24-20:1.  In addition to

---

[1]The City is divided into ten Wards.   Each Ward has its own elected representative.  Alderman Frank Edwards represents Ward 1; Alderman Frank Lesko represents Ward 4; Alderman Sam Cahnman represents Ward 5; Alderman Debbie Cimarossa represents Ward 7; Alderman Kris Theilen represents Ward 8; and Alderman Tim Griffin represents Ward 10.

these tasks, Lawson testified at his deposition that he supervised a snow-removal crew to make certain that the crew satisfactorily removed snow from routes within a specific area of the City.  Lawson Dep., 22:5-23:5. Each evening, Lawson would complete a report explaining what he had accomplished during the day.

Lawson's shift was scheduled to begin at either 6:00 a.m. or 7:00 a.m., depending on the season.  However, due to the fifteen-minute pre-shift meetings that form the basis of this lawsuit, he actually began working at either 5:45 a.m. or 6:45 a.m.  Lawson does not remember when Director Norris sent out the memo informing Lawson that his attendance at the fifteen-minute meeting was no longer mandatory.  Lawson took a twenty- to thirty-minute lunch break most days, but was required to have his cellular telephone turned on and on his person at all times.  Response, Ex. 5, Affidavit of Arthur Lawson (Lawson Affidavit), ¶¶ 7-8.  Lawson stated that he was reprimanded by Dennis McDaniels, the Department's superintendent, for using his lunch break to "engage in other activities which [he] would normally do on [his] free time." Lawson Affidavit, ¶ 10. McDaniels disputes this assertion.  Reply, Ex. 1, Affidavit of Dennis McDaniels (McDaniels Affidavit), ¶¶ 4-6.  Lawson stated that he was

required to keep track of his hours, and that the City compensated him on an hourly basis.  Lawson Affidavit, ¶ 4.

On occasion, Lawson worked more than forty hours per week, such as when he was responsible for snow removal, or when he had to attend neighborhood association meetings.  Lawson requested "straight time" compensation for working more than forty hours per week; he did not request cash payment for those additional hours.  Lawson Dep., 21:7-20. The job description for a division/zone manager states that the position is FLSA exempt.  Motion, Ex. 3, City of Springfield Job Description, p. 137 of 141.

II.   LOGUE

Logue began working for the Department in 2003 as an assistant superintendent of public works.  He reported to Dennis McDaniels.  Most recently, Logue worked as a division/zone manager until he left the City's employ in late June 2009.  At all relevant times, Logue's shifts and work responsibilities as a division/zone manager were the same as Lawson's, but Logue was assigned to Wards 1 and 4.  Logue testified that he would evaluate problems that citizens and Aldermen brought to his attention, and determine when and how they needed to be resolved.  Motion, Ex. 6,

Deposition of Stephen Logue (Logue Dep.), 26:15-24.  Logue stated that the only time he worked in a supervisory capacity in his job as division/zone manager was when he was in charge of a snow removal crew.  Logue Dep., 36:4-13.

Logue testified that he took a lunch break most days, and that the breaks ranged from twenty to forty-five minutes.  Logue Dep., 41:12-15. Logue assumed that his lunch break was paid.  Logue was required to have his cellular telephone on his person at all times during his lunch break, in case something came up.  Response, Ex. 3, Affidavit of Stephen Logue (Logue Affidavit), ¶ 8.  Logue also stated that on most days he had lunch with Greer, his supervisor, and that the two discussed work-related issues during lunch.  Logue Affidavit, ¶ 9.  Two to three times during the week, Logue took a morning break to get coffee; these breaks lasted between two and fifteen minutes.  He sometimes got coffee with Joe Greer.  Logue also attended the fifteen-minute pre-shift meetings.

Logue testified that he frequently worked more than forty hours per week because he attended neighborhood cleanups on Saturdays.  He also worked more than forty hours per week during the tornado cleanup and when there was a lot of snow that needed to be removed.  Logue Dep., 47:2-

6.  Like Lawson, Logue requested compensatory time for occasions when he worked more than forty hours per week.  <u>Logue Dep.</u>, 47:15-22.

III.   <u>MANUELE</u>

Manuele was also a division/zone manager in the Department at all relevant times.  His duties were identical to those performed by Lawson and Logue, except that Manuele was responsible for Wards 8 and 10.  For example, when a problem with a sidewalk was brought to Manuele's attention, he would examine the issue, determine whether it needed immediate attention, and generate a work order so that the proper crew could rectify the problem.  <u>Motion</u>, Ex. 8, <u>Deposition of Anthony Manuele (Manuele Dep.)</u>, 8:19-9:8.  In February 2006, Manuele, at the request of his supervisor, generated a disciplinary report on men working in his snow-removal crew.  <u>Manuele Dep.</u>, 38:15-39:11.  On another occasion, Manuele wrote up an individual who threatened him.  Manuele only communicated these personnel issues to his supervisors and was not responsible for disciplining the offending parties.

Like Lawson and Logue, Manuele attended the fifteen-minute meetings before his shift began until he received the memorandum from Norris instructing him not to do so.  Typically, Manuele would take a half-

hour lunch break, except when he had lunch with Dennis McDaniels, in which case he would sometimes take a longer lunch.  Manuele testified that he was not paid for his lunch break.  Manuele Dep., 28:12-13.  He would also take five-minute breaks during the work day to get coffee.  When Manuele worked more than forty hours per week, he chose to receive compensatory time for the additional hours.  Manuele Dep., 36:4-15. Manuele stated that he was compensated on an hourly basis.  Response, Ex. 2, Affidavit of Anthony Manuele, ¶ 4.

IV.    RICHARDS

Richards became lead foreman of the Department's solid waste crew in 2000.  Richards reported to Greer.  The solid waste crew removed solid waste and debris from residences and alleys, and also picked up trash alongside the City's roadways.   The work orders generated by the division/zone managers indicated to Richards and his crew what work needed to be done, but the ultimate responsibility for prioritizing Richards' crew's tasks fell on Greer.  Richards testified that he would occasionally request that the division/zone managers supervise or oversee his crew's work. Motion, Ex. 9, Deposition of Harvey Richards (Richards Dep.), 20:10-20; 22:13-24.  Richards approved time-off requests made by members of his

crew.

Richards typically worked from 6:00 a.m. until 2:00 p.m., or from 7:00 a.m. to 3:00 p.m., depending on the season.  Like the other Plaintiffs, Richards was required to attend the fifteen-minute pre-shift meetings. Richards stopped attending these meetings in September 2007.  When he worked overtime, Richards received time-and-a-half compensation.  <u>Richards Dep.</u>, 63:8-10.

Richards is a members of the American Federation of State, County and Municipal Employees, Local 3417 (AFSCME).  AFSCME has negotiated a Collective Bargaining Agreement (CBA) with the City.  The CBA notes that "[i]n the event an employee is required to work in excess of eight (8) hours in any workday or on a sixth (6th) consecutive workday in any workweek he/she shall receive time and one-half (1½) pay for all hours worked on such day."  <u>Reply</u>, Ex. 11 (d/e 39-8), <u>CBA</u>, p. 15.  The CBA's grievance procedure defines a "grievance" as "a difference of opinion or dispute raised by the Union, an employee, or group of employees (with respect to a single common issue) covered by this [CBA] and the Employer which concerns the meaning, interpretation or application of the express provisions of this [CBA]."  <u>Id.</u>, p. 6.  The grievance procedure goes on to

11

require that any "grievance" under the CBA be submitted to binding arbitration.  Id., p. 7-8.

V.    WILFORD

Wilford, like Richards, is a member of AFSCME and is covered by the CBA described above.  Wilford is lead foreman of the Department's street sweeper crew.  In this position, he is responsible for addressing problems that are brought to his attention by the division/zone managers.  Greer supervises the street sweeper crew, and directs Wilford's daily activities. The sweeper crew picks up debris from the City's streets and alleys.

Like the other Plaintiffs, Wilford attended the fifteen-minute meetings, which started at 5:45 a.m. or 6:45 a.m., depending on the season. Motion, Ex. 7, Deposition of Peter Wilford (Wilford Dep.), 25:22-26:8. Under the CBA, Wilford was paid for a twenty-minute lunch break each day.  Wilford Dep., 17:8-15.  He also was allowed to take a fifteen-minute break in the morning and in the afternoon, but only did so if his schedule permitted.  Wilford Dep., 17:16-19.  When Wilford worked more than forty hours per week, he was compensated at time and a half.  Wilford Dep., 30:7-11.

VI.  <u>GREER</u>

Greer became assistant superintendent of the Department in 2003. He was responsible for supervising the Department's solid waste crew, sweeper crew, and utility crew.  His shift was either from 7:00 a.m. until 3:00 p.m., or from 6:00 a.m. until 2:00 p.m., depending on the season. Greer would clock in when he arrived in the morning, and, most days, would clock out when he left.  <u>Response</u>, Ex. 8, <u>Deposition of Joe Greer (Greer Dep.)</u>, 54:9-14.  Greer took a paid, one-hour lunch break each day, in addition to several coffee breaks per week, each of which lasted between five and ten minutes.  If and when Greer worked more than forty hours per week, he could choose whether to be compensated with compensatory time or overtime pay.  <u>Motion</u>, Ex. 10, <u>Greer Dep.</u>, 17:11-18:5.  The Department's job description for an assistant superintendent states that the position is FLSA exempt.  <u>Motion</u>, Ex. 5, <u>City of Springfield Job Description</u>, p. 131.

As assistant superintendent, Greer would receive instructions from Superintendent McDaniels.  <u>Greer Dep.</u>, 7:19-22.  Typically, McDaniels would meet with Greer and Mike Dirksen, the second assistant superintendent, before the daily staff meeting to discuss personnel issues

13

and the work plan for the day.  Greer supervised the work crews under his command and dealt with the division/zone managers.  <u>Greer Dep.</u>, 18:15-24.  He was also responsible for completing paperwork describing the vehicles and equipment used on each job, and the number of hours the crew spent working on each job.  Greer would approve time-off requests for members of Richards' crew, and sometimes acted as superintendent if McDaniels was gone.  <u>Richards Dep.</u>, 29:20-30:5; 33:16-34:2.

According to McDaniels, Greer is the individual who told the division/zone managers that they should attend the meetings so that they knew which crews were working in their respective Wards each day. <u>Motion</u>, Ex. 11, <u>Deposition of Dennis McDaniels (McDaniels Dep.)</u>, 66:6-21; 73:14-19.  McDaniels testified that he did not remember ever telling the division/zone managers that they were required to attend the fifteen-minute meetings.  <u>McDaniels Dep.</u>, 66:6-21; 73:14-19.  McDaniels has also stated that the division/zone managers and Greer did not have a set lunch period, and could go to lunch whenever they wanted, and do whatever legal activities they wished during their lunch breaks.  <u>McDaniels Affidavit</u>,¶¶ 3-4.

VII.  <u>PROCEDURAL HISTORY</u>

Plaintiffs filed their Complaint in this case on January 25, 2008, alleging violations of the FLSA.  Specifically, each Plaintiff alleges that the City's failure to compensate him for time spent in the fifteen-minute morning meetings constituted willful violations of §§ 206, 207, and 215 of the FLSA.  Plaintiffs Greer, Manuele, Logue, and Lawson claim that the City failed to compensate them for work that exceeded forty hours per week in the manner prescribed by § 207 of the FLSA.  Defendant now moves for summary judgment as to each Count of the Complaint.

<u>ANALYSIS</u>

Congress passed the FLSA to protect covered employees from overreaching by their employers.  Section 207 requires employers to provide their employees with overtime compensation for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a), <u>amended</u> <u>by</u> Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, 577 (2010); <u>see</u> <u>Barefield v. Village of Winnetka</u>, 81 F.3d 704, 709 (7th Cir. 1996).  The purposes of the FLSA's overtime provision are "to spread work in order to reduce unemployment, to discourage (by increasing the cost to the employer) a degree of overtime that might impair workers' health or safety,

and to increase the welfare of low-paid workers." <u>Yi v. Sterling Collision Ctrs., Inc.</u>, 480 F.3d 505, 510 (7th Cir. 2007). The FLSA is remedial in nature, and "should be liberally construed so as to effectuate its humanitarian purposes . . . ." <u>Walling v. Consumers Co.</u>, 149 F.2d 626, 630 (7th Cir. 1945).

With these general principles in mind, the Court now addresses each of Defendant's arguments in turn.

## I.   <u>STATUTE OF LIMITATIONS</u>

Defendant argues that, under 29 U.S.C. § 255(a), a two-year statute of limitation applies to Plaintiffs' claims because Plaintiffs cannot prove that Defendant's alleged violations of the FLSA were willful. However, Plaintiffs are correct in their observation that Defendant "does not advance any argument that any of the Plaintiffs' claims are time barred." <u>Response</u>, p. 2 n.2. In the City's Reply, it summarily states that "claims by the Plaintiff for overtime and attending the fifteen minute meeting prior to January 2006 should be dismissed" as time barred. <u>Reply</u>, p. 27.

Defendant's bare-bones, undeveloped argument does not sustain Defendant's initial burden of demonstrating that there is no genuine issue of material fact for trial with respect to the statute of limitations. <u>See Fed.</u>

R. Civ. P. 56(c)(2).  Therefore, the Motion is denied in this respect.

II.   FAILURE TO SUBMIT CLAIMS TO ARBITRATION

Defendant argues that it is entitled to summary judgment on Richards's and Wilford's claims because these Plaintiffs failed to follow the grievance procedure specified in the operative CBA, and therefore are precluded from bringing their claims before this Court.  Plaintiffs argue that Richards and Wilford have the right under the FLSA to bring their respective claims in federal court because the relevant CBA does not require them to submit their FLSA claims to arbitration.

The National Labor Relations Act (NLRA) gives a union, in its capacity as its members' collective-bargaining representative, the power to negotiate CBAs with employers.  29 U.S.C. § 159(a); see 14 Penn Plaza LLC v. Pyett, 129 S.Ct. 1456, 1463 (2009).  "As in any contractual negotiation, a union may agree to the inclusion of an arbitration provision in a [CBA] in return for other concessions from the employer."  Pyett, 129 S.Ct. at 1464.  An explicit, clear statement in a CBA that all claims, including statutory claims, are to be pursued through arbitration is enforceable and precludes a federal lawsuit to enforce such statutory rights. Pyett, 129 S.Ct. at 1474; see Gilmer v. Interstate/Johnson Lane Corp., 500

U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement . . . .); <u>Jonites v. Exelon Corp.</u>, 522 F.3d 721, 725 (7th Cir. 2008) (noting that waiver of statutory rights must be "explicit").

<u>Pyett</u> involved the enforceability of a provision in the respondents' union-negotiated CBA requiring them to arbitrate claims under the federal Age Discrimination in Employment Act of 1967.  129 S.Ct. at 1461.  The CBA in question stated that there would "'be no discrimination against any present or future employee by reason of . . . age . . ., including, but not limited to, claims made pursuant to . . . the Age Discrimination in Employment Act . . . .  All such claims shall be subject to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations.'" <u>Id.</u> at 1461.  The U.S. Supreme Court held that this provision was enforceable because it "clearly and unmistakably" required that all claims under the ADEA be arbitrated.  <u>Id.</u> at 1474.

The U.S. Court of Appeals for the Seventh Circuit in <u>Jonites</u>, which was decided before <u>Pyett</u>, affirmed the district court's grant of summary judgment to the defendant-employer.  The language in the CBA at issue in that case stated that "should any dispute or difference arise between the

Company and the Union or its members as to the interpretation or application of any of the provisions of this Agreement or with respect to job working conditions ..., the dispute or difference shall be settled through the grievance procedure." <u>Jonites</u>, 522 F.3d 721, 725. The specified "grievance procedure" was arbitration. <u>Id.</u> While affirming the lower court's decision on other grounds, the Seventh Circuit noted that the CBA's language did not constitute "an 'explicit' waiver of the right to sue under the Fair Labor Standards Act." <u>Id.</u> at 725-26.

Defendant's contention that Richards and Wilford are precluded from presenting their FLSA claims to this Court fails. Unlike the provision at issue in <u>Pyett</u>, the grievance procedure in this case neither explicitly, clearly, nor unmistakably requires Plaintiffs to submit FLSA claims to arbitration. The provision in <u>Pyett</u> expressly required that claims arising under the ADEA be submitted to arbitration; the provision in this case does not mention the FLSA specifically, nor does it mention federal law generally. It states only that a "grievance," defined as a dispute over the meaning or terms of the CBA itself, be submitted to binding arbitration.

In fact, the language of the CBA in this case is very similar to the language quoted in <u>Jonites</u>, language that the Seventh Circuit found was not

"an 'explicit' waiver . . . ."  <u>See</u> 522 F.3d at 725.  Defendant's attempt to distinguish <u>Jonites</u> is unavailing, particularly in light of the fact that <u>Jonites</u> was decided before the U.S. Supreme Court's decision in <u>Pyett</u>.

Finally, Defendant relies on <u>Leahy v. City of Chicago</u>, 96 F.3d 228, (7th Cir. 1996), also decided before <u>Pyett</u>.  In <u>Leahy</u>, the Seventh Circuit held that the CBA in question precluded the plaintiffs' FLSA claims for overtime compensation for time they spent working during their half-hour meal period.  96 F.3d at 232.  The CBA allowed time-and-a-half compensation for all hours the plaintiffs worked in excess of eight hours per day, or forty hours per week, and contained a grievance procedure that required that any dispute be submitted to arbitration.  <u>Id.</u> at 231-32.  The Seventh Circuit found that this provision was adequate to protect the plaintiffs' rights under the FLSA.  <u>Id.</u> at 232.

<u>Leahy</u> does not assist Defendant here because, as Plaintiffs indicate, the Seventh Circuit has subsequently noted that <u>Leahy</u> "was a special case," in essence confining <u>Leahy</u>'s holding to its precise factual scenario.  <u>Jonites</u>, 522 F.3d at 724-25; <u>see</u> <u>Chavez v. Don Stoltzner Mason Contractor, Inc.</u>, 2010 WL 1417029, at *4 (N.D. Ill. Apr. 5, 2010).  Additionally, it is difficult to reconcile <u>Leahy</u> with <u>Pyett</u>, where the U.S. Supreme Court

determined that union members are precluded from filing suit to vindicate federal statutory rights only if the relevant CBA "clearly and unmistakably" requires them to submit such claims to arbitration.  <u>Pyett</u>, 129 S.Ct. at 1474.

The arbitration provision in the CBA does not preclude Richards and Wilford from bringing their FLSA claims before this Court.  The Court therefore denies Defendant summary judgment on this ground.

III.   <u>PLAINTIFFS DID NOT WORK MORE THAN 40-HOUR WEEKS</u>

Defendant next argues that Plaintiffs Manuele, Logue, Greer, and Lawson are not entitled to overtime compensation because they did not work more than forty hours per week.  Defendant states that Plaintiffs' half-hour lunch breaks can be used to offset the fifteen-minute meetings they were required to attend before starting their shifts.   Plaintiffs disagree, pointing out that there is a factual dispute as to whether Plaintiffs were even compensated for their respective lunch breaks, and as to whether the City restricted these Plaintiffs' activities during their lunch breaks.

Under the FLSA, bona fide meal periods are not considered work time. 29 C.F.R. § 785.19.  Bona fide meal periods "do not include coffee breaks or time for snacks." 29 C.F.R. § 785.19.  An employee must be "completely

21

relieved from duty" during his meal period, and "is not relieved if he is
required to perform any duties, whether active or inactive, while eating." 29
C.F.R. § 785.19.  The Seventh Circuit uses the predominant-benefits test
to decide whether meal periods constitute work periods.  Barefield, 81 F.3d
at 710.  Under the predominant-benefits test, a meal period does not
constitute work time "when the employee's time is not spent predominantly
for the benefit of the employer."  Alexander v. City of Chicago, 994 F.2d
333, 337 (7th Cir. 1993) (internal quotation marks and citations omitted).
In most instances, determining whether a meal period was spent
predominately for the employer's benefit entails resolving factual disputes.
Barefield, 81 F.3d at 710.

Defendant is not entitled to summary judgment on this ground
because factual disputes abound regarding the length of Plaintiffs' respective
lunch breaks, the activities the City permitted Plaintiffs to perform during
their lunch periods, and whether Defendant did, in fact, compensate
Plaintiffs for their lunch periods.  For example, while McDaniels has stated
that Plaintiffs were free to use their lunch period for whatever legal purposes
they desired, Lawson stated that this was not the case, and that he was
reprimanded for going to a supermarket during his lunch period.  McDaniels

<u>Affidavit</u>, ¶¶ 2-4; <u>Lawson Affidavit</u>, ¶ 10.  Logue stated that he spent most of his lunch breaks with Greer discussing work activities.  <u>Logue Affidavit</u>, ¶ 9.  The affidavits and deposition transcripts before the Court demonstrate that there are genuine issues of material fact on the issue of whether Plaintiffs' lunch breaks were spent predominantly for the City's benefit. Given these factual discrepancies, Defendant is not entitled to summary judgment.

Defendant also argues that there is "no evidence" that Plaintiffs Greer and Lawson attended the fifteen-minute meetings because their time cards do not include time spent at the meetings.  Defendant is wrong.  Both Greer and Lawson testified at their depositions that they attended the meetings, and other Plaintiffs corroborate their presence at the meetings.  These parties' conflicting positions demonstrate that there is a genuine issue of material fact on this issue, precluding summary judgment.

IV.   <u>PLAINTIFFS ARE EXEMPT FROM OVERTIME COMPENSATION</u>

Defendant next argues that Plaintiffs are exempt from receiving overtime compensation under the FLSA because they worked in an administrative capacity.

Section 207 of the FLSA requires employers to provide time-and-a-half

compensation to employees who work more than forty hours per work week. 29 U.S.C. § 207(a)(1), amended by Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, 577 (2010).  However, employees engaged "in a bona fide executive, administrative, or professional capacity" are exempt from this provision of § 207.  29 U.S.C. § 213(a)(1).  The exemption applies to an employee who: (1) earns a salary or fee of $455 or more per week; (2) primarily performs duties "directly related to the management or general business operations of the employer or the employer's customers"; and (3) primarily performs duties in which the employee exercises "discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(1)-(3).  With respect to the first criterion, an employee is compensated on a salary basis if "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).

FLSA exemptions are narrowly construed, Walling, 149 F.2d at 630, and the employer bears the burden of proof in establishing whether an

24

employee falls within an exemption, <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 196-97 (1974). "Determining the duties encompassed by an employee's position is a question of fact; determining the appropriate FLSA classification is a question of law." <u>Roe-Midgett v. CC Servs., Inc.</u>, 512 F.3d 865, 869 (7th Cir. 2008).

Here, the Court need not address the second and third criteria because, as Plaintiffs point out, there is a factual dispute as to whether Plaintiffs Lawson, Logue, Manuele, and Greer were compensated on an hourly or salary basis.[2] While Director Norris stated that they were salaried employees, these Plaintiffs have testified or stated that they were compensated based on the number of hours they worked and that they were required to maintain time cards. Furthermore, the pay stubs that Defendant submitted with its Reply do not conclusively establish that Plaintiffs were compensated on a salary basis. While each pay stub adds up to eighty hours for two weeks of work, certain stubs indicate that some of the Plaintiffs were compensated with compensatory time, which is consistent with being paid on an hourly basis. <u>Reply</u>, Ex. 5 (d/e 39-6), p.

---

[2]The parties do not dispute that the City compensated Wilford and Richards on an hourly basis.

81-108.  Nor is the fact that Plaintiffs Logue's, Lawson's, Manuele's, and Greer's job descriptions indicate that they are FLSA exempt necessarily conclusive.  See Roe-Midgett, 512 F.3d at 870 ("An employee's title is not controlling; courts instead must engage in a case-by-case analysis of the employee's duties and responsibilities.").

Defendant has not shouldered its burden of proving that Plaintiffs fit under the FLSA's exemptions because there is a genuine issue of material fact regarding whether Plaintiffs Lawson, Logue, Manuele, and Greer were salaried.  Therefore, summary judgment on the issue of whether the Plaintiffs worked in bona fide administrative or executive capacities is denied.

V.  PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

Defendant's last argument is that Plaintiffs are not entitled to injunctive relief under the FLSA because only the Secretary of Labor can bring such an action.  See 29 U.S.C. § 217; United Food & Commercial Workers Union v. Albertson's, Inc., 207 F.3d 1193, 1197-98 (10th Cir. 2000).  Plaintiffs concede that this is the case.  Response, p. 3 n.3. Defendant is thus entitled to summary judgment on Plaintiffs' claims for injunctive relief.

<u>CONCLUSION</u>

THEREFORE, Defendant's Motion for Summary Judgment (d/e 34) is GRANTED in part and DENIED in part.  The Court awards summary judgment in favor of Defendant and against all Plaintiffs on Plaintiffs' respective claims for injunctive relief.  Summary judgment is denied in all other respects.  The final pretrial conference in this matter at this time remains set for November 1, 2010, at 9:30 a.m.  Counsel are directed to contact the office of the next Judge assigned to this case to confirm that hearing date.

IT IS THEREFORE SO ORDERED.

ENTER:   June 9, 2010

FOR THE COURT:

s/  Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE